Howry, J.,
delivered the opinion of the court:
This is a general average case; a claim for insurance paid for a part of a cargo stated to have been delivered under circumstances which the findings disclose. There is but one question, and that relates to the character of the transaction between the shipmaster and the French.
It appears that the schooner Lucy sailed on a commercial voyage from Boston bound to L’Anceveau, and on arriving there the French administration demanded and took from the shipmaster a part of the cargo. The administration was asked for an ordinance or obligation for amount of the goods taken, but this request was refused, and in lieu thereof a receipt for the goods was given to the master. Thereupon the master made application to a notary to take his protest, but was refused. Some months after the transaction the master ar *441 rived in Boston and immediately made his protest without stating the nature of the receipt. It does not affirmatively appear that the receipt was handed to the underwriters in settlement. The protest having been delayed and the receipt withheld, it is contended that the case is not one of indemnity, but of contract.
When the cargo was shipped at Boston, the particular articles alleged to have been taken by the administration are shown by the invoices to have been- of but one quality. In the accounts rendered to the owners the master charged different lots of the goods at different prices, which the defendants also contend is indicative of bargain and sale.
The owners sold other cargoes to the French Government, and claimed payment therefor under the treaty of 1803, according to a public document known as “Payments of awards under certain treaties,” pages 140, 141. "Phis, the defendants further contend, is an indication that the present demand is a fifth-article, claim.
The fifth article of the treaty of 1800 between the United States and France provides that “The debts contracted by one of the two nations with individuals of the other, or by the individuals of one with the individuals of the other, shall be paid, or the payment may be procured in the same manner as if there had been no misunderstanding between the two States. But this clause shall not extend to indemnities claimed on account of captures or confiscations.” (Public Treaties, 224.)
The neglect of the master to make an earlier protest would be a circumstance tending to discredit the protest as it was actualty made if there was anything to show that the master had an earlier opportunity to protest; but there is nothing in the record to show that he had that opportunity in France, and inasmuch as he made a protest on the very dajT of his arrival at the home port, it is most reasonable to believe that the master did not delay his action through choice. It is not essential to the validity of the protest that the particulars of the receipt should accompany it unless reason exists for believing the receipt contradicted the statements of the protest. Both receipt and protest were probabty produced when the claim for the insurance was made. The owners must have obtained both from the master. At all events, the insurers *442 accepted the proofs of their liability and paid the owners for the loss, and though the court is not bound to accept the action of the insurers as proving the loss, they should not now be held under the evidence which appears independent of the receipt to have made an illegal payment. Such a holding-would punish the underwriters for failing to require the production of all evidence possible, or neglecting, if the receipt was produced, to preserve the same as one of the evidences of a liability which they deemed themselves bound to meet at the time and did meet in the course of business.
It is probable that the French authorities at first intended to impress the goods, giving the American owners a voucher or other evidence of indebtedness, which the French Government would sooner or later acknowledge.. If that had been done the owners could have obtained payment pursuant to the fifth article of the treaty of 1800. But the taking of the cargo and final refusal to give an obligation therefor negatives the intention to create a debt and the circumstances leave it a case of confiscation. The element of “debt” disappears in the face of the plain coercion.
The fact that the owners of the vessel had other cargoes taken or purchased by the French, for which they presented claims under the fifth article of the treaty and were paid, does not indicate that the receipt, whatever it was, given to this master was an obligation that the French Government would have recognized had it been presented. The fact that it was either not presented or if presented was not paid sufficiently establishes the fact, in connection with the other circumstances in the case, that the receipt was not intended as an obligation for an indebtedness.
The underwriters having taken the risk of administration as well on shore as on board, they had a valid claim of indemnity upon the French Government for the amount of their loss prior to the ratification of the treaty between the United States and the French Bepublic concluded September 30, 1800; and the claim was relinquished to France by the United States in consideration of the relinquishment of certain national claims of France against this country.
The conclusions of the court will be certified to Congress, together with a copy of this opinion.